William BALTZ, Individually, and Won-
der Products Company, a Corpora-
tion, Plaintiffs,

v.

Amelia T. BOTTO, Individually, and V.
F. Botto & Company, a Proprietorship,
and Southern Toy Manufacturing Com-
pany, a Corporation, Defendants.

Civ. No. 2733.

United States District Court
W. D. Tennessee, W. D.
Oct. 31, 1956.

Heiskell Weatherford, Jr., Weatherford & Weatherford, Memphis, Tenn.,

Benjamin H. Sherman and Anthony R. Chiara, of Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for plaintiffs.

John T. Wilkinson, Jr., Memphis, Tenn., W. A. Snow, Rummler, Rummler & Snow, Chicago, Ill., for defendants.

BOYD, District Judge.

This action came before the Court on the complaint of the plaintiffs against defendants for infringement by defendants of United States Letters Patent No. 2,437,015, issued to William Baltz on March 2, 1948, and of its reissue, Re. 23,849, dated July 13, 1954.

Upon trial of said cause in open Court, October 1 through October 4, 1956, and upon full consideration of the pleadings, stipulations, depositions, and exhibits and of the motions made in this cause, the Court makes the following:

## Findings of Fact

1. This action was filed on or about September 7, 1955, for infringement of United States Letters Patent No. 2,437,-015, which was duly and legally issued to William Baltz, plaintiff, on March 2, 1948, and of Re. 23,849, a reissue of Patent No. 2,437,015, which was duly and legally reissued to said William Baltz on July 13, 1954.

2. Plaintiff, Wonder Products Company, a Tennessee corporation, duly organized on the 28th day of April, 1955, by reason of a certain assignment in writing dated May 2, 1955, is the assignee and successor to all of the rights, claims and demands in, to and under an exclusive license under U. S. Patent No. 2,437,015, and Re. 23,849, of E. J. Koller, A. G. Manning and W. E. Matthews, copartners doing business under the name and style of Wonder Products Company, plaintiffs in Civil Action No. 2738, at the time of filing the complaint therein, and said copartners were, in turn, the successors to and assignees of all of the rights, claims and demands of Wonder Products Company, a corporation dissolved on July 3, 1951.

3. The plaintiff, William Baltz, is the patentee and owner of United States Patent No. 2,437,015, issued on March 2,

1948, entitled "Suspended Horse", and of the reissue thereof, Re. 23,849, dated July 13, 1954; and the plaintiff Wonder Products Company, a Tennessee corporation organized on April 28, 1955, is the exclusive licensee under said original and reissue patent and the said plaintiffs have the right to jointly bring this action.

4. Defendant, Southern Toy Manufacturing Co., is a Texas corporation having its principal office and place of business at Waco, Texas, and is the manufacturer of the "Texas Bronc" and other spring-suspended hobby horses complained of in Civil Action No. 2738, typical models of which are portrayed in Pltfs. Exs. W-3, W-16, W-12, W-13 and W-14, and is selling and has sold said spring-suspended horses within this district within six years prior to the filing of the complaint in this action.

5. Defendant, Amelia T. Botto, is doing business as V. F. Botto & Company and has an office and place of business at Memphis, Tennessee, and in such business is selling and has sold said spring-suspended horses manufactured by Southern Toy Manufacturing Company within this District, within six years prior to the filing of the complaint in this action. On or about September 27, 1956, by stipulation of the parties and upon order of this Court, defendant, Amelia T. Botto, individually, and doing business as V. F. Botto & Company, voluntarily appeared in this cause, waived the necessity of further service of process, adopted the allegations of the answer heretofore filed in this action, and was substituted as party defendant in the place and stead of V. F. Botto & Company, which had erroneously been referred to as a corporation of the State of Tennessee.

6. The hobby horses identified as Plaintiffs' Exhibit 3 "Twin-Jumper", Plaintiffs' Exhibit 4 "Black Beauty" and Plaintiffs' Exhibit 8 "Texas Bronc" are identical with and are spring-suspended hobby horses manufactured and sold by the defendant, Southern Toy Manufacturing Company, and are identical with spring-suspended hobby horses manufactured by the defendant, Southern Toy Manufacturing Company, and sold by

both defendants in this District within six years prior to the filing of the complaint, and are products of said defendants that plaintiffs charge to infringe said patents in suit.

7. Plaintiffs rely upon the Claim of Baltz original patent No. 2,437,015, being the only claim thereof, and claims 1 and 2 of Baltz Reissue Patent No. 23,849; claim 1 of said reissue patent being identical to the claim of the original Baltz patent No. 2,437,015.

8. The spring-suspended hobby horses identified as Plaintiffs' Exhibit 9 "Wonder Horse DeLuxe", Plaintiffs' Exhibit 10 "Wonder Pony", Plaintiffs' Exhibit 11 "Wonder Mare" and Plaintiffs' Exhibit 12 Regular "Wonder Horse" are identical to the commercial products made and sold by plaintiff, Wonder Products Company, and/or its predecessors.

9. The hobby horse identified as Plaintiffs' Exhibit 13 is the original model of a spring-suspended horse made by plaintiff, William Baltz, and is the model which said plaintiff furnished to his patent attorney, Victor J. Evans, and from which the patent drawings and specifications were prepared.

10. The model identified as Plaintiffs' Exhibit 14 is a demonstration model, one-half scale of the original commercial structure made and sold by William Baltz, and is the model which said William Baltz demonstrated before the Board of Appeals of the Patent Office, and is identical in construction to the commercial exemplification of the structure of his patent made by the patentee, William Baltz, and sold commercially by him commencing May 3, 1945. Said model is identical in structure to the commercial spring-suspended hobby horse made and sold by Wonder Products Company, co-plaintiff, under its exclusive license from the plaintiff William Baltz during the years 1949, 1950 and 1951.

11. The spring-suspended hobby horses manufactured and sold by defendants are identical in structure to plaintiff Baltz' commercial model, Plaintiffs' Exhibit 14, and the commercial structure, plaintiffs' Exhibit 1, made by plaintiff Wonder Products Company except for

minor details in design of the artificial horse body. Plaintiffs' Exhibit 8, Defendants' "Texas Bronc", is a Chinese copy of plaintiffs' commercial structure Plaintiffs' Exhibit 1 except for slight changes in the silk screening of the saddle and the addition of a fabric tail; Plaintiffs' Exhibit 4, defendants' "Black Beauty", is a Chinese copy of plaintiffs' commercial structure except that the color is black instead of red and except for certain minor changes in the positioning and configuration of the horse's head and the design of the legs, Plaintiffs' Exhibit 3, defendants' "Twin Jumper" is identical to plaintiffs' commercial model, Plaintiffs' Exhibit 1, except for minor details in the construction of the artificial horse, which has been designed to accommodate a smaller child but contains all of the characteristics of the artificial horse including the hand hold or bridle, the seat, and foot rest or stirrups. All of these spring-suspended hobby horses made and/or sold by defendants operate and function in exactly the same manner as plaintiffs' said commercial spring-suspended hobby horses and in exactly the same manner as Plaintiffs' Exhibit 13, the original Baltz model, which is substantially an exact embodiment of the structure set forth in the specifications and drawings of the patents in suit, and all perform identically in the same manner, with the combination of the same elements functioning together to produce the same unitary result.

12. The purpose, action, function and operation of, and the results obtained from the original Baltz model, Plaintiffs' Exhibit 13, and of and from the commercial structures manufactured by Baltz and by Wonder Products Company, and of and from the spring-suspended hobby horses made and/or sold by defendants are clearly described in the specifications of both the Baltz original and Reissue patents in identical language, as follows:

"This invention relates to a suspended hobby horse and more particularly to that type of hobby horse that will give a rocking motion as well as a swaying motion.

"An object of the invention being to provide a hobby horse that tilts to either side up to a 45 degree angle at the same time it is doing a galloping or bucking.

"Another object of the invention is to provide a hobby horse that will not fall off balance no matter at what angle the hobby horse is suspended.

"This invention is capable of simulating more nearly the actions of a horse, thereby creating more amusement for children than those in use at the present time. It is safe and dependable and can be used by children of all ages."

13. All of the said spring-suspended horses, the embodiment of the Baltz patents, Plaintiffs' Exhibit 13, the plaintiffs' commercial structures, and the defendants' commercial structures include the same combination of the same elements, to wit: (1) a base, (2) uprights secured to said base, (3) plates or screw-eyes secured to the uprights, (4) coil springs connected by said plates or screw-eyes to said uprights, (5) an artificial horse, and (6) plates or cross-pieces secured to said horse to extend at right angles thereto, with said springs connected to said cross-pieces at an angle thereto and adapted to stably support said horse thereby with relation to said uprights, as set forth in the specifications to accomplish the action and bring about the result described therein.

14. The Patent Office Board of Appeals, in allowing the claim of the original Baltz application in the exact form as it appears in the patent, defined the invention in the following words:

"The claim includes:

" ' * * * Plates secured to the inner top edge of said uprights, coil springs having one end thereof secured to said plates * * *, plates secured to said horse at right angles thereto, the opposite ends of said springs connected to said plates at an angle thereto and adapted to support said horse thereby with relation to said uprights.'

"These features, the plates and the springs, enable the horse to be supported in a stable manner and at the same time support the horse and its rider so that the horse may swing from side to side, rear upwardly, pitch forwardly, or can combine a number of these movements without being upset or without the toy being overturned."

15. Plaintiff, Wonder Products Company, and its predecessors, have made minor changes in the structure and design of its various commercial spring-suspended horses sold as the regular "Wonder Horse," the "Wonder Horse De-Luxe", the "Wonder Mare", and the "Wonder Pony" and have paid royalties to Baltz under the exclusive license on all such models of spring-suspended hobby horses, said royalties totalling $239,849.-41, from May 1, 1949 through December 31, 1955.

16. The structures of the plaintiffs' said commercial spring-suspended horses and of the defendants' spring-suspended horses here in suit are the full equivalent of the structure disclosed in Baltz patent No. 2,437,015 and in the reissue thereof Re. 23,849, and accomplish the same result in the same manner with the parts and elements thereof cooperating to function in the same way as in the structure of the patent, and unless licensed, infringe the claim of said patent No. 2,437,015 and claims 1 and 2 of said Re. 23,849.

17. None of said patents relied upon by defendants, to wit: Bean No. 284,940, Upper No. 1,950,042, Meek No. 478,450, and Brooks No. 276,955 as the patents which most clearly resemble the Baltz original model, in the order named with either Bean or Upper first in order suggests the same relationship of elements, nor do the structures of said patents function in the same manner or produce the same results as the Baltz structure.

18. The Bean, Crandall, Converse, Upper and Thomas patents are references cited in the file of the Baltz original and reissue applications and were considered by the Patent Office Examiner in granting the reissue patent No. 23,849, and

Crandall, Converse and Thomas were references in the file of the original Baltz application and were considered by the Patent Office Examiner and the Board of Appeals in granting the original patent No. 2,437,015. None of the other prior art patents cited by defendants is more pertinent nor does any more closely resemble the Baltz structure than the references cited before the Patent Office and the Board of Appeals.

19. The Baltz structure has great therapeutic value to its rider, as well as exercise and play value; it develops the upper muscles of the body and the arms, the muscles of the buttocks and the muscles of the legs; it develops coordination in the child; and has been one of the principal aids in teaching blind children to walk in overcoming their fear of motion; and in strengthening the legs, arms and other muscles of polio afflicted, cerebral palsy and other handicapped children.

20. The validity of the Baltz original and reissue patent is strengthened by the proof of the great commercial success of the Baltz spring-suspended hobby horse.

21. In view of what was common knowledge on the part of those skilled in the art prior to the applications for Baltz patents Nos. 2,437,015 and Re. 23,-849, the creation of the Baltz structure required more than mere mechanical skill and amounted to invention in that the patentee constructed a new, improved structure by unobvious changes which made possible the attainment of a result not obtained by devices of prior art. (Board of Appeals, Pltfs. Ex. A, Paper 29, Par. 6.)

22. The Baltz patented structure is not an aggregation of old elements doing substantially the same thing in the same way, but is a combination of old and known elements cooperating together in a new modus operandi to produce a new, different and unobvious result.

23. The reissue application merely added to the specification descriptive and explanatory matter with respect to the structural and functional relationship of the elements making up the Baltz inven-

tion shown in the drawings and specification of the original patent.

24. Neither of the two claims of the Reissue Baltz patent covers a device not covered by the original single claim of the original Baltz patent. Claim 1 of the Reissue patent is identical with the single claim of the original patent and claim 2 of the Reissue patent contains all of the elements of claim 1 plus additional elements and therefore claim 2 is narrower in scope than the single claim of the original patent.

25. Since there has been no broadening of the original patent, no intervening rights inured to the defendants.

26. The original Baltz patent No. 2,437,015 was issued on March 2, 1948 and was reissued on an application for reissue filed April 16, 1954, more than two years after the issuance of the original patent, and was duly and legally reissued in accordance with the Patent Laws of the United States, Title 35, United States Code Sections 251 and 252, and did not enlarge the scope of the claims of the original patent.

27. On December 5, 1952, in Civil Action No. 2461, in the United States District Court for the Eastern District of Arkansas, in an action entitled "William Baltz, et al., Plaintiffs, v. John A. Humphries, et al., Defendants" a final decree was entered by consent, an exemplified copy of which was admitted into evidence at the trial, (Pltfs. Ex. 53) which said Decree reads in part as follows:

"Paragraph 5. The Defendant, John A. Humphries, doing business under the name and style of Woodworth's, is a resident of Carlisle, Arkansas, and Defendant, Berry Dry Goods Company, is a corporation organized under the laws of the State of Arkansas, and that said Defendants have infringed upon said Letters Patent No. 2,437,015 by the sale of certain suspended horses, manufactured by and/or purchased from McLennan Supply Company of Waco, Texas, and McDonald and Shaw of Dallas, Texas, within the Eastern District of Arkansas, Western Division, subsequent to the issuance of said Letters Patent and within six years prior to the filing of the Complaint herein.

"Paragraph 7. That a perpetual injunction issue out of and under the Seal of this Honorable Court, directed to the Defendants, John A. Humphries, doing business under the name and style of Woodworth's and Berry Dry Goods Company, their associates, directors, officers, attorneys, clerks, agents, servants, workmen, representatives, confederates, privies, and all persons, firms and corporations claiming by, through or under them, or in active concert or participating with them, or under their authority, restraining them and each of them and they and each of them be and are hereby permanently enjoined and restrained from directly or indirectly making, using, selling or offering to sell, except under license, any suspended horses embodying the inventions disclosed and claimed in said Letters Patent No. 2,437,015, or in any other way from infringing thereon."

28. The plaintiffs in said Arkansas suit were the plaintiff herein, William Baltz, and Wonder Products Company, a partnership, consisting of E. J. Koller, A. G. Manning and W. E. Matthews, to which the plaintiff herein, Wonder Products Company, a Tennessee corporation, is the direct successor.

29. The suspended horses, manufactured by and/or purchased from McLennan Supply Company of Waco, Texas, there held to infringe the Baltz patent No. 2,437,015, were proved at the trial to be the structures known as plaintiffs' Ex. 2 and 5 and are substantially identical in structure with the spring-suspended horses manufactured and sold by defendant, Southern Toy Manufacturing Company (Pltfs. Ex. 3, 4 and 8).

30. McLennan Supply Company, of Waco, Texas, the manufacturer of said horse decreed to infringe, undertook to defend and indemnify the defendants in the Arkansas suit and through its attorney, W. W. Naman, who, acting with the full authority of the McLennan Supply

Company, retained and paid counsel; the consent decree was entered with the knowledge of McLennan Supply Company and no objection was made to its entry.

31. Willie O. Wetzel was a partner or at least a joint adventurer, in the McLennan Supply Company and was a party in privity, in active concert and participating with the defendants named in said Arkansas consent decree and was and is bound by said judgment.

32. Southern Toy Manufacturing Company, defendant herein, is a successor to Wetzel Toy Manufacturing Company, a proprietorship, previously organized by Willie O. Wetzel to manufacture spring-suspended horses, and Willie O. Wetzel was one of the organizers, a principal stockholder, one of the original directors, and the original general manager of defendant, Southern Toy Manufacturing Company. Accordingly, Southern Toy Manufacturing Company is a party in privity with, acting through or under, in active concert, and participating with Willie O. Wetzel and is bound by the judgment of said consent decree and accordingly is barred from urging the defense of invalidity and from claiming non-infringement of the original claim of Baltz patent No. 2,437,015, which is identical to claim 1 of Baltz reissue Patent No. Re. 23,849.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter and has venue of this action.

2. The Baltz original patent No. 2,437,015 reissued as Re. 23,849 is owned by the plaintiff William Baltz and exclusively licensed to the plaintiff Wonder Products Company, and the claim of the original patent was good and valid in law and claims 1 and 2 of reissue patent are good and valid in law and have been and are being infringed by the defendants.

3. A patent is presumed to be valid upon issuance by the Patent Office and such presumption of validity can only be overcome by strong and convincing proof and such burden is on the defend-ants. Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; Title 35, U.S.C. § 282.

4. The presumption of validity of a patent is entitled to greater weight where the patent issued after appeal to the Board of Appeals. Celanese Corporation of America v. Essley Shirt Company, Inc., 2 Cir., 1938, 98 F.2d 895; Trane Co. v. Nash Engineering Co., 1 Cir., 1928, 25 F.2d 267, 268.

5. Where the most pertinent prior art was cited against the Reissue Patent in the Patent Office, there must be added to the usual presumption of validity that attaches to a patent grant, the force of a growing recognition of finality that is generally being accorded to administrative determinations supported by evidence, on the ground that the administrative agency is expected to have developed an expertness in its specific field beyond what may be expected from the Courts wherein adjudications range the whole field of human controversies. Williams Mfg. Co. v. United Shoe Machinery Corporation, 6 Cir., 1941, 121 F.2d 273, 277, affirmed, 1941, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537.

6. The presumption of validity attaching to the grant of the patent is further supported by wide-spread adoption and commercial success accorded the patented device by the public. Hazeltine Research, Inc., v. Avco Mfg. Co., D.C.N.D.Ill.1954, 126 F.Supp. 595, affirmed, 7 Cir., 1955, 227 F.2d 137; Wellman-Seaver-Morgan Co. v. William Cramp & Sons Ship & Engine Building Co., 6 Cir., 1925, 3 F.2d 531.

7. A new combination of old elements producing a new and useful result or a new and useful method of performing an old function in a new way is patentable. Forestek Plating & Mfg Co. v. Knapp-Monarch Co., 6 Cir., 1939, 106 F.2d 554; Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 1943, 134 F.2d 871, certiorari denied, 1943, 320 U.S. 747, 64 S.Ct. 50, 88 L.Ed. 444.

8. In determining patentability the concept of the new and useful improvement must be considered along

with the actual means of achieving it in determining the presence or absence of invention. In re Bisley, 1952, 197 F.2d 355, 39 C.C.P.A., Patents, 982.

9. The simplicity of a patented structure does not negative invention. Goodyear Tire & Rubber Co., Inc., v. Ray-O-Vac Co., 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

10. The claims in suit which have hereinabove been found to be valid define patentable invention over each and every one of the prior art references asserted by the defendants in this case.

11. The elements of the defendants' accused structures are the full equivalent of the essential elements of the Baltz patented invention, function in the same manner, accomplish the same result in the same way, and infringe both claims of the Baltz patent Re. 23,849.

12. The substantial equivalent of a thing, in the sense of the Patent Law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape. Union Paper-Bag Machine Co. v. Murphy, 1877, 97 U.S. 120–125, 24 L.Ed. 935; Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 1950, 339 U.S. 605, 607–608, 70 S.Ct. 854, 94 L.Ed. 1097; Winans v. Denmead, 1853, 15 How. 330, 341–344, 56 U.S. 330, 341–344, 14 L.Ed. 717; Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 41, 50 S.Ct. 9, 74 L.Ed. 147; affirming 7 Cir., 24 F.2d 15; Vrooman v. Penhollow, 6 Cir., 1910, 179 F. 296; Ridgedale Ellis "Patent Claims", Sec. 56, page 67.

13. In the instant case all of the elements declared by the inventor to be necessary to the inventive step are included in the defendants' accused structure. Bobertz v. General Motors Corp., 6 Cir., 1955, 228 F.2d 94, 97 is similarly distinguishable.

14. Recent knowledge of additional prior art is sufficient justification for reissue of a patent. Weller Mfg. Co. v. Wen Products, Inc., D.C.Ill.1954, 121 F.Supp. 198, 206.

15. Baltz Re. 23,849 does not claim a device not covered by the claim of the original Baltz patent No. 2,437,015, nor does it present new concepts not disclosed by the original patent. Baltz v. The Fair, D.C.N.D.Ill.1955, 52 C 2134.*

16. It is not new matter to explain in a reissue the operation of a device which in the original was only described. Walker on Patents (Dellers' Ed.) Vol. 2, pp. 1356–1357; Carew v. Boston Elastic Fabric Co., C.C.D.Mass.1871, Fed.Cas.No. 2,397, 3 Cliff. 356; Whitcomb v. Spring Valley Coal Co., C.C.N.D.Ill.1891, 47 F. 652, 658–659.

17. Where the amended specification does not enlarge the scope of the patent by extending the claim so as to cover more than was embraced in the original patent, no intervening rights can inure to the defendants. Eames v. Andrews, 1887, 122 U.S. 40, 59–60, 7 S. Ct. 1073, 30 L.Ed. 1064.

18. Both the original and the reissued claims are entitled to the application of the doctrine of equivalents. Engineering Development Laboratories v. Radio Corp. of America, 2 Cir., 1946, 153 F.2d 523, 524–525.

19. The single claim of the original Baltz patent, identically reissued as claim 1 of the Reissue patent is entitled to the same effect and scope continuously from the date of the original patent, under the Patent Laws. Patent Codification Act, 1952, 35 U.S.C. § 252.

20. The defendant Southern Toy Manufacturing Company, through Willie O. Wetzel, was and is in privity with the party defendants to the Arkansas consent decree, entered December 2, 1952, in Civil Action No. 2461, in the United States District Court for the Eastern District of Arkansas, Western Division, entitled William Baltz et al. v. John A. Humphries et al., and, therefore, the defendant Southern Toy Manufacturing Company is bound by said decree and is barred and estopped from contesting

* Consolidated with No. 50 C 1761, 147 F.Supp. 468.

the issues of validity and infringement with respect to the single claim of the original Baltz patent reissued as Re. 23,-849 and such issues are res adjudicata against Southern Toy Manufacturing Company. Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 42 F.2d 965, 967; Penfield v. C. & A. Potts & Co., 6 Cir., 1903, 126 F. 475; National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co., C.C.1899, 95 F. 991; Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82, 139 A. L.R. 1.

21. Under Texas law the requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of interest in the profit. Meehan v. Valentine, 1892, 145 U.S. 611, 12 S.Ct. 972, 36 L.Ed. 835; Texas Electric Service Co. v. Kinkead, Tex.Civ.App.1935, 84 S.W.2d 567. An agreement or understanding between the parties that one of the partners shall bear the losses, although profits are to be divided equally, does not defeat the partnership. Paggi v. Quinn, Tex.Civ.App.1944, 179 S.W.2d 789.

22. Willie O. Wetzel was an operating and participating partner, or joint adventurer, in the McLennan Supply Company, and is bound under the Arkansas decree as a party "in privity" with the defendants "or in active concert or participating with them."

23. A consent decree is valid and binding as such, between the parties thereto and their privies. Warner v. Tennessee Products Corp., 6 Cir., 1932, 57 F.2d 642, 643; 49 C.J.S., Judgments, § 178, page 316; Woods Bros. Const. Co. v. Yankton County, S. D., 8 Cir., 1931, 54 F.2d 304, 81 A.L.R. 300; Steingruber v. Johnson, D.C.N.D.Tenn.1940, 35 F. Supp. 662; United States v. Radio Corp. of America, D.C.Del.1942, 46 F.Supp. 654, appeal dismissed, 1942, 318 U.S. 796, 63 S.Ct. 851, 87 L.Ed. 1161.

24. Defendant, Southern Toy Manufacturing Company, is the successor to Wetzel Toy Manufacturing Company, formerly a proprietorship of Willie O. Wetzel, and having succeeded to all of the assets and business of Willie O. Wetzel is in privity with Wetzel and bound by the Arkansas consent decree.

A successor in interest is in privity with its predecessor in interest and subjected to the disadvantages which by operation of final adjudication had attached to the product in the hands of its former owner. Bigelow v. Old Dominion Copper Co., 1912, 225 U.S. 111, 129, 32 S.Ct. 641, 56 L.Ed. 1009; Freeman on Judgments (5th Ed.) Section 439, page 964; Alb, Inc., v. Noma Lites, Inc., 107 U.S.P.Q. 120, affirmed 2 Cir., 1956, 231 F.2d 662.

25. So also a person who was to all intents and purposes in full privity with the original parties to a consent decree who had bought their peace and relief from litigation by express acknowledgment of the validity and infringement of plaintiffs' patent and agreed never again to infringe it, cannot thereafter under the name of a new corporation violate such decree. Western Electric Co. v. Cinema Supplies, 8 Cir., 1935, 80 F.2d 106, 110; Pick Mfg. Co. v. General Motors Corp., 7 Cir., 1935, 80 F.2d 639, 640.

26. The equities in this suit are found to be with the plaintiffs and plaintiffs should prevail over the defendants.

27. Plaintiffs are entitled to an injunction restraining defendants against further infringement of said Reissue patent No. 23,849 and to an accounting against defendants for general damages occasioned by defendants' infringement thereof and of said original patent No. 2,437,015, for the use made of the invention by the defendants, together with interest thereon and costs of this suit, and plaintiffs should have judgment therefor and execution thereon.

28. All matters regarding damages and attorneys fees are reserved for further hearing at such time as an accounting against the defendants, as hereinbefore set forth, has been accomplished.