## WELLMAN–SEAVER–MORGAN CO. v. WILLIAM CRAMP & SONS SHIP & ENGINE BLDG. CO.

(Circuit Court of Appeals, Sixth Circuit. January 15, 1925.)

No. 3971.

**1. Patents ⬰36—When sales are evidence of invention stated.**

If the patent is broad enough to cover the form which was largely sold, even though not the form of the patent drawing, the patentee is entitled to some or all of the credit coming from public acceptance.

**2. Patents ⬰328—Johnson, 1,030,890, for hydraulic valve, held valid and infringed.**

The Johnson patent, No. 1,030,890, for a hydraulic valve, *held* not anticipated, valid, and entitled to a liberal range of equivalents. Claims 1 and 4 also *held* infringed.

**3. Patents ⬰72—When superficial similarities must be minimized in destructive effect on advance of great commercial value stated.**

When the prior structures involved different engineering problems, as when comparing water under small and under great pressures, superficial similarities must be minimized in their destructive effect on an advance of great commercial value.

**4. Patents ⬰36—Commercial success has evidential force.**

If earlier patents show a close analogy to a later one, with differences which hardly seem material, and yet it appears that they never found commercial favor, while the later did, this fact has evidential force to indicate that the differences are more important than they seem, and that the relatively slight later changes and adaptation to a different demand have a valid claim to inventive character.

**5. Patents ⬰178—Claim limitation pertaining only to accessory may be minimized, where liberal rule of equivalency justified.**

Where a claim limitation pertains only to an accessory of the substantial invention and a liberal rule of equivalency is justified, the limitation may be minimized.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by William Cramp & Sons Ship & Engine Building Company against the Wellman-Seaver-Morgan Company. Decree for complainant, and defendant appeals. Modified and affirmed.

A. J. Hudson, of Cleveland, Ohio, and Arthur C. Fraser, of New York City (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for appellant.

Clifton V. Edwards, of New York City, (Frank A. Bower, of New York City, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

PER CURIAM. This is an appeal from a decree finding valid and infringed claims 1, 2, and 4 of patent 1,030,890, issued to Johnson, July 2, 1912, on an application filed October 8, 1909, for a hydraulic valve. The appellant here, defendant below, held a license under the patent for some years, and manufactured and installed what was supposed to be the patented valve. Later the license terminated, the appellee became sole licensee, and the appellant began the manufacture of another form of hydraulic valve for the same general purposes. The defense was that, in order to escape invalidity, the patent must be so narrowly construed as to avoid infringement.

Upon the argument we had grave doubts whether the decree could be sustained, and we have held the case a long time in the endeavor to give it the thorough study which had thus become necessary. In the end these doubts have been removed, and we accept and approve in all substantial respects the disposition and the treatment of the case by the District Judge. We need only notice those points, as against the opinion below, which appellant's counsel have most forcibly presented.

[1] The valve, when put upon the market as the commercial form of the invention, differed considerably from the form shown in the drawings. As usual in such cases, counsel for the appellant rely upon the large commercial adoption to show merit in the device, and opposing counsel say that the patented structure has never been manufactured at all. As is also usual in such cases, to make this reply is not helpful. If the patent is of the specific scope which defendant contends, there has been no infringement; while, if it is so generic that it covered the commercial form, and this form represented the substantial invention, although with some improvements, the patentee is entitled to some or all of the credit

coming from public acceptance. In this commercial form, the up-stream curve on the moving valve section, which curve brought about the initial lifting effect as the valve opened, was developed into a right-angled shoulder or flange, and the portion of the water-filled high-pressure conduit immediately surrounding the moving valve, in the patent drawing form, was cut off by partition into an annular chamber, sometimes opening to the high pressure and sometimes not. The initial lifting effect was the same, and we think there was no departure from the substantial novelty of the device, or from the language of the claims, as they are hereinafter construed.

[2, 3] A review of all the patents and devices relied upon to anticipate or limit the invention satisfies us that the trial court gave them their full and proper weight. Indeed, appellant's counsel concede that the prior patent art in conduit valves does not show any valve with a movable part seating against a contracted conduit portion, which contraction produces a region of lower pressure and which lower pressure in connection with the higher up-stream pressure becomes effective as an element in the hydraulic operation of the valve. It is true that the language of the claim would seem to include small nozzle valves, and that earlier small valves show some of the elements involved, to an extent that would be important if they were high-pressure conduit valves; but the actual engineering problems, when treating garden hose, or even fire hose nozzles, so differ from those involved in the handling of large volumes of water under great pressure in valves for penstocks for turbine wheels that superficial similarities must be minimized in their destructive effect upon an advance of great commercial value. Under the construction of the claims which was given below, and which we accept, we do not find anticipation in any prior structure either of the paper patents or in use in the Reclamation Service; and in this conclusion we assume, without deciding or intimating, that the first Ensign structures have priority over Johnson.

[4] It is alleged that much of the earlier art should not be considered, because it consists of paper patents, and, on the other side, it is insisted that it is immaterial whether an earlier patent ever went into use. We do not doubt that a patent which was never manufactured at all may serve as a complete anticipation, if it sufficiently discloses identity; but cases like the present give the proper field for the full effect which can rightly be carried by the deprecatory desig-

nation "paper patents." If earlier patents show a close analogy, with differences which, according to our present light, hardly seem material, and yet it appears that such a patent, or a succession of them, never found any commercial favor, this fact has evidential force to indicate that the differences are more important than they seem, and that the relatively slight later changes and adaptation to a different demand have a valid claim to inventive character.

In the appellant's installation, which is the basis of this charge of infringement, it has carried along into some further development Johnson's commercial form, and the superficial dissimilarity to the patent is increased, but it still has appropriated the essence of the invention. It carries into the interior of the valve, to bring about extension of the telescopic section, the high hydraulic pressures from the up-stream region, and this pressure co-operates with the weakened external resistance, caused by the contracted portion of the conduit, to permit the expansion and seating of the valve. It then, in order to permit and cause the contraction of the telescopic section and the unseating and opening of the valve, shuts off the interior from the high-pressure connection and opens it to a lower pressure, whereby the existing high pressure in the conduit gives the valve an initial lift from its seat, and the reaction of the water, flowing through the slightly opened valve, co-operates in completing the opening. This idea, in its completeness, it took from Johnson and from nowhere else.

It is true that in the patent drawing form the high and low pressures exert their operative effect immediately upon the face and the interior of the movable nose of the valve, while in defendant's form this nose is directly operated by a piston rod connected to a piston in a cylindrical chamber in the interior of the valve, and true that the operative high and low pressures are exerted directly upon the upper and lower faces of this piston, while the change in water pressures in the main interior valve chamber, so far as it exists, is relatively unimportant or only reinforcing; but it does not affect the principle of operation that the pressure which drives the moving section, and so closes the valve, comes from a part of the interior chamber connected with the high-pressure source instead of from the whole interior chamber with like connection.

Appellant's argument, which goes through its rack and pinion device up to its present form, is misleading. We cannot regard the former as the genesis of the latter. The

rack and pinion device was operated by external nonhydraulic power, and the fact that the power-multiplying parts were located inside the shell of the valve is of no importance.

The claims call for "reverse curves" in the exterior surface of the movable valve section. The appellant's device does not carry this geometrical figure. The question is one of equivalency, and involves the same conflict which we discussed in D'Arcy Co. v. Marshall Co., 259 F. 236, 238, 240, 170 C. C. A. 304, where the claim mentions a specific form which defendant does not use, but where the form which it does use is in many respects equivalent.

[5] The criterion suggested in that decision is not inapplicable here. What Johnson desired was that his movable valve section should in its upper (up-stream) part have a surface upon which the water pressure would exercise a lifting effect, and in its lower part a surface which would be reacted upon by the flowing water to complete the lifting. For this purpose he employed a reverse curve, and this descriptive language was in his mind from the beginning, and was in the claims from the beginning, as a preferred or convenient form which would accomplish this result; but there was no invention in this precise feature. Reverse curves were old, and stream lines adapted to minimize friction were old. The essence of Johnson's invention was in the alternate use of high and low pressures within the valve, in co-operation with the low pressure in the contracted portion of the conduit, and his reverse curves furnished the accessories to his underlying invention.

There is, therefore, reason for saying, that the liberal, rather than the strict, rule of equivalency should be applied, and this is in addition to the tendency to a liberal construction demanded by the highly useful and novel general character of the invention. The upper curve, which by its outward swing and tendency towards the horizontal permitted a lifting effect, had been developed in Johnson's commercial form to a square corner giving a horizontal flange, which of itself would intensify the lifting effect at the cost of a less perfect stream line, and then in appellant's form this flat lifting surface is transferred to the interior, along with enough of the operating exterior pressure. The lower one of the reverse curves has been flattened into a straight line, and the inherent reactionary effects are somewhat lessened, but the equivalency in a broad sense remains. The flattening of this curve is compensated for by such a change in the angle and in the relation to the opposite wall of the conduit that the reactionary effect is substantially retained.

If in the patent the only use of the region of lower conduit pressure was to furnish a source for effectively getting this pressure inside the valve, it would have to be granted that appellant's device, with its chief, if not sole, reliance upon atmospheric pressure, would present a question of variance. Whether such selective connection as appellant has between the high and low pressure regions inside the conduit would satisfy the demands of the patent if the function just stated were the sole utility of the conduit low pressure, we need not decide. Even if there were no connection between the low-pressure region in the conduit and the valve interior, there is still room for this region to play an essential part in the novelty of the invention, because to close the valve it is essential, not only that the interior force should be raised to the high-pressure stage, but that the exterior resistance should be diminished. We think, therefore, that the invention as described and claimed would cover a device without connection between the low-pressure conduit region and the valve interior, atmospheric valve-connection being substituted; but this conclusion cannot apply to claim 2, which expressly requires that the connected low-pressure region should be within the conduit. There is, at least, so much doubt whether appellant has this connection effectively that we think claim 2 should be excluded from the finding of infringement and the decree below should be modified accordingly.

Excepting as the decree is to be thus modified, it is affirmed, and the case is remanded for further proceedings in accordance therewith. There will be no costs in this court.