**OLIVER UNITED FILTERS, Inc. v. SILVER.**

Civ. A. No. 2613.

United States District Court
D. Colorado.

March 31, 1952.

Silver covering a process and apparatus for continuous diffusion in the extraction of sugar from sugar beets. The suit was originally instituted by the plaintiff Oliver under the Declaratory Judgment Act, 28 U.S. C.A. §§ 2201, 2202, to test the validity of the Silver process patent No. 2,390,131, issued December 4, 1945, and the question as to whether such patent was infringed by the process performed by an apparatus manufactured and operated by Oliver, which herein will be referred to as the "Morton machine." Silver filed a counterclaim with his answer, and in both charged infringement of his hereinabove-identified patent by Oliver's use of the Morton machine. In addition, Silver filed a second counterclaim in which he charged infringement, by the same acts of Oliver, of a second Silver patent, No. 2,468,720, issued April 26, 1949, covering both process and apparatus.

In this state of the pleadings, and as determined at the pre-trial conference, Silver, notwithstanding his designation as defendant, was permitted to assume the role of plaintiff, with the right to open and close, and so present the issues in the order normally followed in patent infringement suits. Thus, herein, rather than designating the parties as plaintiff and defendant, they will be referred to as Silver and Oliver.

The basic questions for discussion are:
1) The validity of the two Silver patents; and
2) Whether the claims of the Silver patents are infringed in the particulars alleged by the accused Morton machine and its operation?

Pershing, Bosworth, Dick & Dawson and Winston S. Howard, all of Denver, Colo., and Mellin & Hanscom, Oscar A. Mellin, Leroy Hanscom, and Jack E. Hursh, all of San Francisco, Cal., for plaintiff.

Fairfield & Woods, James A. Woods, and Charles J. Beise, all of Denver, Colo., and Wilkinson, Huxley, Byron & Hume, Chicago, Ill., and W. A. McGrew, Denver, Colo., for defendant.

KNOUS, District Judge.

This is a patent infringement suit involving two patents owned by the defendant

Oliver first charges that the Silver patents are invalid as not disclosing a patentable invention in view of prior knowledge and the prior art. In support, Oliver argues that Silver merely followed prior knowledge and the prior art and did not produce a new diffusion process and that his apparatus differs from the prior art merely in details of design well within the engineering skill of one skilled in the diffusion art.

In opposition, Silver concedes that he is not the originator of any one of the elemental parts or steps of his inventions, but

claims that his inventions consist of new combinations of elements which produce a new and useful result and hence are patentable.

■■■ The Court is satisfied that the record and evidence support Silver's position on this point.

Since the inception of the sugar beet industry, the extraction of the sugar from the beets traditionally has been effected by a process of diffusion which is accomplished essentially by the bringing of water into contact with the pulp of the beets, which previously have been sliced into small shreds called "cossettes," whereby their sugar content passes into solution with the water to form a "juice," as the industry terms it, which is subsequently refined into commercial beet sugar. An understanding of the chemical and physical laws relating to diffusion, of course, antedated the industry. In the diffusion process the ideal result sought is the extraction of the highest possible percentage of the sugar content of the beets with a minimum of their impurities into a juice economically low in water content. Essentially, the problem is one of keeping unexhausted cossettes exposed to an unconcentrated portion of the diffusing liquid. This is so, because when the contact is between saturated liquid and undepleted cossettes the extraction ratio necessarily will be low. This situation early suggested to the inventors in this field the necessity for motion and the flow of both cossettes and the liquid in the cells or containers in which the treatment was effected. In fact, experience with what is known as the "Robert Battery,"—a batch type of apparatus in which the cossettes as they are depleted are manually transferred from cell to cell to meet fresher liquids—standard equipment in the industry throughout the world for more than a century, suggested the employment of a countercurrent flow, in which the cossettes and liquid would travel in opposite directions not only in the cell but in a battery as well. Whether upon this basis, or some other, the record shows workers in the prior art in their search for economically feasible procedures for continuous diffusion devised and tried straight countercurrent flow systems. However, as the evidence discloses, the countercurrent practices so devised were not functionally or commercially successful. One of its difficulties arose from the clogging effect of the cossettes as they moved against the liquid.

In an effort to overcome the latter difficulty, workers in the prior art devised and turned to what is called the countercurrent-concurrent system of flow, wherein the cossettes and liquid, respectively, were caused to pass through the battery as a whole by movement in opposite directions, while progressing concurrently in the same direction through each cell.

The evidence shows that in actual operation the countercurrent-concurrent flow system did overcome the clogging objection attendant to the straight countercurrent method, but developed a new problem from the discovery that when the cossettes were transferred from cell to cell (an action not required in straight concurrent systems) there was carried with them sufficient liquid of higher sugar concentration to seriously impair the diffusion process in the cells to which they were progressively conveyed. This factor seemingly defeated any commercial acceptance or utilization of an apparatus employing a countercurrent-concurrent flow system.

Such a broad outline was the state of the development of the act when Silver entered the field. At this point, as the Court construes the evidence, it is clear that the problem of producing a commercially-successful continuous diffusion system remained unsolved, notwithstanding, as has been mentioned, that numerous attempts had been made involving almost every conceivable flow system and method of handling the cossettes.

As viewed by the Court, the evidence also indicates that at that time there was a widespread feeling among the workers in the field that acceptable practical results could not be secured from the countercurrent-concurrent flow system, but rather that effort should be made to bestow workable characteristics upon the straight concurrent type of flow.

Indeed, there are indications in the record that Mr. Shafor, who appeared as an

938

expert witness for Oliver, shared the latter view.

Notwithstanding, Silver selected the countercurrent flow type as being the one presenting the greatest possibilities of commercial success. His claimed inventions, therefore, exist in and are restricted to the field of true diffusion systems employing a countercurrent-concurrent flow.

As the result of his study and effort as viewed by the Court, Silver produced, as claimed by him, the following major changes in the prior art:

First: He employed in the process an enforced submergence of the cossettes by causing them to pass from a point above the level of the juice to a point below the level of the juice by giving the cossettes a downward and upward course of movement with respect to the juice level, and

Second: He effected a substantial separation of the cossettes and their associated liquid at the time the cossettes are transferred from one cell to the next (hitherto practically unsolved in the prior art) without the utilization of force as would mash or damage the cossettes (an objectionable feature in prior apparatus employing pressure in expelling the liquid and thereby forcing undesirable nonsugar substances into the juice), or interference with the diffusion activity.

As specified in his patents, the enforced submergence of the cossettes was created by establishing a gravitational flow of the juice from cell to cell in a relatively non-foaming, quiescent condition (a desirable situation never practically achieved in prior art apparatus), while at the same time forcing the cossettes through a path of movement which originates above the liquid level in each cell respectively, and passes downward to a point below the surface of the liquid level into an intimate diffusing relationship with the liquid, and thence upwardly to a point above the liquid where a substantial and effective draining occurs. Although some of these elements may have been old, the combination was new.

■ There can be little question about the success, both practically and commercially, of the Silver process and apparatus. The record shows that Silver has installed

sixteen commercial units at an average cost of $250,000 each. According to the evidence, each of these installations has effected great savings in the cost of operation and reduction in the loss of sugar. Parenthetically, it should be mentioned in this connection that while commercial success in and of itself cannot establish patentability, it is entitled to attention in determining whether a given device constitutes a patentable invention. See Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, 1005.

In dealing with its contention that Silver practiced solely in the prior art, Oliver dissects Silver's inventions into their elemental parts and proceeds to attack them piecemeal on the basis that such elemental parts, standing alone and separately, are not in themselves new.

That such does not necessarily defeat invention is established by the following language of Mr. Justice Bradley in the opinion in Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177: "At this point we are constrained to say that we cannot yield our assent to the argument, that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

Such, also, is the Court's conclusion herein.

■ This principle, that a new combination with a new mode of operation is invention even if all the parts thereof are old, and even if the function of the combination

is also old, has been recognized and announced by the Supreme Court on many occasions. See particularly, Williams Manufacturing Co. v. United Shoe Machinery Corp., 316 U.S. 364, 367, 62 S.Ct. 1179, 86 L.Ed. 1537; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 325, 332, 29 S.Ct. 503, 53 L.Ed. 816; Expanded Metal Co. v. Bradford, 214 U.S. 366, 381, 29 S.Ct. 652, 53 L.Ed. 1034, and Seymour v. Osborne, 11 Wall. 516–555, 78 U.S. 516–555, 20 L.Ed. 33.

This rule has been followed consistently by the Court of Appeals in this circuit. See Harris v. National Machine Works, Inc., 10 Cir., 171 F.2d 85, 88; Haynes Stellite Co. v. Osage Metal Co., 10 Cir., 110 F.2d 11, 15; Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500, 506, 512; Independent Oil Well Cementing Co. v. Halliburton, 10 Cir., 54 F.2d 900, 906, and Dow Chemical Co. v. Williams Bros. Well Treating Corp., 10 Cir., 81 F.2d 495, 498.

Because of the factual analogies involved, the following language of Chief Judge Phillips in the opinion in Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442, 446, is particularly pertinent here:

"A new combination of old elements whereby a new and useful result is obtained or whereby an old result is obtained in a more facile, economical, and efficient way is patentable, provided the discovery and reduction to practice of the novel combination requires greater skill and higher thought than would be expected of an ordinary mechanic trained in the art. Minneapolis, St. P. & S. S. M. Co. v. Barnett & Rec. Co., 8 Cir., 257 F. 302, 306; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 8 Cir., 215 F. 362, 369; National Hollow B. B. Co. v. Interchangeable B. B. Co., 8 Cir., 106 F. 693, 707; Galvin Elec. Mfg. Co. v. Emerson Elec. Mfg. Co., 8 Cir., 19 F.2d 885, 890.

"The fact that others in quest of improvements approached close to but did not discover the principle and mode of operation by which automatic pulp level control is accomplished in the patent in suit, and that such control constitutes a much desired and substantial improvement in mineral separation devices, indicates that such principle and mode of operation would not have been apparent to an ordinary mechanic skilled in the art, who was seeking to accomplish such control. New York Scaffolding Co. v. Whitney, 8 Cir., 224 F. 452, 457; Expanded Metal Co. v. Bradford, 214 U.S. 366, 381, 29 S.Ct. 652, 53 L.Ed. 1034.

"We are of the opinion that Pearce has simplified and increased the efficiency of the process and apparatus for flotation separation, and has made a valuable contribution to the art; that, while the elements of claims one and three are old, the combination thereof is new and an old result is produced in a more facile, economical, and efficient way; and that the discovery and reduction to practice of such novel combinations rose above the skill of the ordinary mechanic trained in the art.

"We conclude, therefore, that claims one and three are valid."

Neither does the Court believe, as further is contended by Oliver, that the claims of the Silver patents, particularly those which Silver alleges are infringed by the accused Morton machine, are invalid because anticipated by the disclosures of the Krauss or Rak patents, nor that the Silver claims are vulnerable as not being patentably distinguished from the disclosures of the latter patents.

The claims of the Silver patents so in question were allowed by the Patent Office over the patents to Krauss and Rak, both of which were cited and considered by the Patent Examiner and eliminated as failing to disclose the combination of the allowed claims of the patent. Such is of some significance. See Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, 1002.

In the interest of brevity, the Court deems it unnecessary to detail the analysis of the Krauss and Rak patents which convinces it that neither of them combines the essential elements which have produced the new and successful results achieved by the Silver process and apparatus nor discloses a combination therefor.

It also may be added that the Court does not generally concur in the construction

Oliver places on the Silver claims in question.

As expressive of its views on the issue in consideration, the Court adopts the following language in the opinion in Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 421, 22 S.Ct. 698, 705, 46 L.Ed. 968: " 'This defense presents the common instance of a patent which attracted no attention, and was commercially a failure, being set up as an anticipation of a subsequent patent which has proved a success, because there appears to be in the mechanism described a possibility of its having been, with some alterations, adaptable to the process thereafter discovered. As hereinafter observed, a process patent can only be anticipated by a similar process. It is not sufficient to show a piece of mechanism by which the process *might* have been performed.' " See also Bates v. Coe, 98 U.S. 31, 42, 48, 25 L.Ed. 68; Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658 and Dow Chemical Co. v. Williams Bros., supra.

Herein it is clear to the Court that neither Krauss nor Rak disclosed processes or apparatus capable of performing the successful commercial operation achieved by Silver.

While it would seem from Oliver's opening brief that of the eight prior art patents invoked by it at the trial, it had elected to use only the Krauss and Rak patents to support its foregoing contention that the Silver patents are invalid, the implications of its reply brief may be that it desired to reinvoke the six remaining (Steffen, Turrentine, Olier, Dobler, Gazagne and Neufeldt) as being anticipations. If the latter is the situation, the Court is of the opinion and holds that the claims of the two Silver patents are not anticipated by the six prior art patents last mentioned, four of which, it may be noted, were cited by the Patent Office in the prosecution of the patents in suit.

That such circumstance is not without consequence is made to appear from the following excerpt from the text of Walker on Patents, Deller's Edition, page 1221: "Where references were before the Patent Office and were rejected as anticipations, the presumption of novelty and invention which arises from the grant of the patent is greatly strengthened. (Hildreth v. Mastoras, 257 U.S. 27, 32 [42 S.Ct. 20], 66 L.Ed. 112; Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 6 Cir., 1930, 48 F.2d 73, 75; Gordon Form Lathe Co. v. Walcott Machine Co., 6 Cir., 32 F.2d 55; General Electric Co. v. Save Sales Co., 6 Cir., 1936, 82 F.2d 100, 103,." Also see Williams Mfg. Co. v. United Shoe Mach. Corp., 6 Cir., 121 F.2d 273, 277, and Steiner v. Schwartz, supra.

Oliver next contends that the second Silver patent (No. 2,468,720) is invalid because of double patenting in that "it purports to patent and monopolize the same alleged invention purported to be patented and monopolized by the first Silver patent.

When two applications are co-pending in the Patent Office, as was the situation herein, "it is a matter of indifference which of the patents issued first, provided that the claims are for separate inventions." Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259, 260.

Where "the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained." Miller v. Eagle Mfg. Co., 151 U.S. 186, 198, 14 S.Ct. 310, 315, 38 L.Ed. 121.

The Silver process, as such, is the subject matter of the first patent in suit. The second patent, now in challenge, contains both apparatus and process claims. Apparatus claims fall within a different statutory class from process claims and hence the apparatus claims of the second patent are separable from the process invention covered by the prior patent. The process claims of the second patent cover an improvement feature in the process not disclosed in the first patent, viz., that of discharging the liquid from each cell, respectively, by screening the same through an enlarged outlet located near to but actually below the surface of the liquid level.

In these circumstances, the Court is of the opinion that the rule against double patenting has not been offended.

Oliver's next objection is that the alleged process claims of the Silver patents are in-

valid as describing merely the function of the Silver apparatus disclosed in the two patents in suit. The Court is of the opinion the rule so invoked has no application here, because the steps of treatment as defined in the Silver claims, as understood by the Court, characterize the processing of the cossettes divorced from specific mechanical means, and thus represent a true and valid process as distinguished from a functional operation.

Notwithstanding that it is directed more to the infringement phase of the case, the Court deems it proper at this point to dispose of the questions of "file wrapper estoppel" and "disclaimer" raised by Oliver against certain claims of the Silver patents. During the prosecution of his first patent following the rejection of certain of his claims by the Patent Office and their cancellation by him, Silver inserted several new claims. Upon the basis of certain language in this and in Silver's statement to the Patent Office in their support, Oliver contends that the Silver patent, if valid at all, is limited to machine composed of vertically disposed cells and that Silver thereby has expressly disclaimed his patent claims all machines in which the treatment zone is horizontally disposed. The significance of this contention lies not only in the circumstance that accused Morton machine employs horizontal cells, but as well, that Silver himself in his latest installations has substituted a horizontal type of machine with scrolls for his earlier used chain type vertical cells. A careful study of the full text of the statement in the file wrapper, which is too lengthy to include in this memorandum, convinces the Court that the words "alternate upward and downward courses," stressed by Oliver, when used in context and considered in relation to the remainder of the statement, refers to the upward and downward coursing of the cossettes and liquid as a procedural step and were not intended to refer to the structural features of the apparatus in which the process was to be carried on. This construction is supported by the circumstance that in his first patent Silver specifically states that his process "also may be performed in cells disposed horizontally" as well as in the vertical cells illustrated.

In addition, when it is considered that prior art patents showed constructions having cells both horizontally and vertically disposed, it cannot well be said that the Patent Office did not allow Silver's claims on any assumption that the claims had to be limited to vertically disposed cells in order to avoid the prior art.

Accordingly, the Court is satisfied that the foregoing contention of Oliver is without merit.

The totality of the considerations hereinabove expressed together with the presumption of validity arising from the granting of a patent by the Patent Office leads the Court to the conclusion that the two Silver patents in suit are valid and must be so declared.

As was mentioned initially, the second major issue in the case is whether the claims of the Silver patents are infringed in the particulars alleged by the accused Morton machine and its operations.

Oliver contends that no infringement can be found since the Morton machine substantially duplicates and follows the teaching of the prior art patents in every important aspect and phase of its construction and operation.

Oliver uses as references the same eight prior art patents advanced in support of its contention that the Silver patents were invalid for want of invention and as having been anticipated. As hereinabove appears, the Court has determined herein that the Silver process and apparatus was a patentable invention as a new combination of old elements whereby a new and beneficial result, never attained before, was produced. In reaching this conclusion, the Court necessarily was satisfied from its study of the prior knowledge and prior art, that neither, nor any of the references, disclosed the successful new combination devised and claimed by Silver. In other words, in the view of the Court the prior art is devoid of the teaching of the combination produced by Silver. Such, with the considerations hereinafter to be mentioned, convinces the

Court that Morton has followed Silver and not the prior art.

Like the Silver apparatus, the Morton machine employs the countercurrent-concurrent flow system with drainage of the cossettes between the cells.

In this connection, because of one of Oliver's arguments, it may be mentioned that the attitude of the Patent Office (concerning which the parties are in controversy) with respect to the relationship of Morton's patent application with the prior art naturally are limited to the question of patentability and are without significance on the question of whether Morton's device infringes upon Silver or any other existing patent.

Before the time of the Silver applications and patents, Morton was undertaking to solve the problem of producing a continuous diffuser. He was conversant with the prior art references herein. It thus must be assumed that whatever the prior art was capable of suggesting to him was within his knowledge at that time. Yet, it would appear that he was then working on a device which differed widely from his present machine. He did secure a patent on this earlier device but insofar as the record shows it never met commercial success.

In point of time it seems clear that Morton never produced a workable process or machine until after he knew of Silver's inventions and was aware of their functional and commercial success.

Without going into a detailed comparison, the Court is convinced that the Silver and Morton devices do the same work in substantially the same way and accomplish substantially the same result. It may be said in passing that before reaching this conclusion, the Court gave careful consideration to Oliver's contention that Silver has failed to show in the Morton machine the "alternate downward and upward courses of cossette travel in each stage of treatment" as specified in one of the claims of the Silver patents alleged to have been infringed. The Court believes that the rotation of the spokes of the open scroll in the Morton machine effect a downward movement of the cossettes and their submergence and that from that position upward travel is compelled by the lifting action of the Morton fork.

As the Court already has determined, for reasons hereinabove given, Silver never has disclaimed from his claims machines in which the treatment zone is horizontally disposed. In fact, as has been pointed out, his first patent specifically states that his process may be carried out in horizontally-disposed cells as well as in the vertical cells shown in his illustrations. Thus, the circumstance that the treatment cells in the Morton machine are disposed horizontally does not relieve it from the infringement charges.

The Court, therefore, concludes that the claims of the Silver patents in the particulars alleged by him are infringed by the accused Morton process and apparatus.

Counsel for Silver may prepare and submit Findings of Fact and Conclusions of Law consistent with this memorandum opinion, together with an appropriate judgment and decree, all of which shall be settled by notice if not stipulated to.