## HOOK et al. v. HOOK & ACKERMAN, Inc.
### No. 7990.

United States District Court
W. D. Pennsylvania.
Aug. 21, 1952.

See also, D.C., 103 F.Supp. 790.

William B. Jaspert, Pittsburgh, Pa., for plaintiff.

Charles L. Cunningham, Pittsburgh, Pa., Harry Price, New York City, for defendant.

STEWART, District Judge.

Plaintiffs brought this action seeking a declaration that the "Hook & Miller" boiler embodies none of the inventions covered by patent No. 2,247,796 and that, therefore, the patent is not being infringed by them. Defendant filed a counterclaim seeking damages for patent infringement and unfair competition and seeking other relief on equitable grounds. The issue of infringement, being the primary one, was tried separately by this Court sitting without a jury, and upon all the evidence, we make the following

### Findings of Fact

1. Plaintiffs, C. Howard Hook and W. W. Miller, are a partnership doing business under the name and style of Hook & Miller; defendant Hook & Ackerman, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania; and each has its principal place of business in the City of Pittsburgh, in the Western District of Pennsylvania.

2. Harold S. Ackerman is the patentee of patent No. 2,247,796 granted July 1, 1941

3. Prior to the issuance of the patent, Harold S. Ackerman assigned an undivided one-half interest to any rights in or growing out of the application therefor to John A. McCance. Shortly thereafter McCance re-assigned his one-half interest to plaintiff C. Howard Hook.

4. By agreement dated August 7, 1939, C. Howard Hook and Harold S. Ackerman granted a non-exclusive and indivisible license under patent No. 2,247,796 to Hook & Ackerman, Inc.; and, on January 28, 1942, granted a similar license to Sears, Roebuck & Company.

5. By agreement dated September 28, 1945, C. Howard Hook and Harold S. Ackerman granted to Hook & Ackerman, Inc. an "exclusive right and license (subject to the outstanding license of January 28, 1942 to Sears, Roebuck & Co.) to manufacture, use and sell, and to license others so to do, heater boilers covered by and coming under United States letters patent 2,247,796, granted July 1, 1941." In addition, by the same agreement, C. Howard Hook and Harold S. Ackerman assigned to Hook & Ackerman, Inc. all their right, title and interest in the Sears, Roebuck & Company license agreement of January 28, 1942.

6. The patent in suit discloses heating boilers constructed of boiler sections superposed on a burner base, the sections being interconnected to constitute a flow passage for the water to be heated, the number of sections determining the heating capacity of the boiler.

7. Heating boilers built up of boiler sections superposed on a burner base have been in general use for many years.

8. Both plaintiffs and defendant manufacture, sell and advertise boilers in which boiler sections are superposed on a burner base for use principally in heating dwellings. The water from the return flow of the radiators of the dwelling entering one end of the boiler structure is circulated through the boiler sections and heated by the burners in the base, and the products of combustion pass up between the staggered tubes of alternate sections to the stack of the heating furnace.

9. Defendant, Hook & Ackerman, Inc., has charged plaintiffs with infringement of patent No. 2,247,796 and plaintiffs have denied the charge contending that the Hook & Miller boiler does not employ any of the patented features of the Hook & Ackerman boiler. Plaintiffs brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a judicial determination of the question of patent infringement.

10. Heating boilers are divided into three general classifications: (1) the coiled tube type common in hot water heaters; (2) the boiler section type in which the heating tubes through which the water circulates while exposed to the heat of the burners are arranged in vertical sections; and (3) the same as (2) except that the heating tubes are arranged in horizontal sections. The total heating capacity of types (2) and (3) may be varied by varying the total number of tube sections used.

11. In recent years gas has become available as a heating fuel for water boilers and the use of gas fired heaters and gas fired structures has increased.

12. C. Howard Hook, one of the parties-plaintiff, has manufactured gas fired boilers since 1911 and he states that plaintiffs' Hook & Miller boiler is more efficient than the Hook & Ackerman boiler for the reason that it has a wet base wherein water is circulated around the fire box to absorb the infra red rays thereby capturing more heat than would otherwise be done. The Hook & Ackerman boiler does not have this feature.

13. The Ackerman patent in suit No. 2,247,796 discloses a specific form of boiler employing horizontal boiler sections that are superposed on a dry burner base, intermediate sections of the boiler being enveloped by peripheral flanges of the sections immediately above and below to constitute the assembled sections a self-contained boiler unit. The water tubes of the horizontal boiler sections are of cycloidal shape and the tubes are staggered to provide a tortuous path for the products of combustion passing from the burners up-ward through the boiler sections to the stack.

14. Prior to the issuance of the patent in suit, United States patent No. 409,314 was granted August 20, 1889 to G. C. Blackmore, and United States patent No. 593,659 was granted November 16, 1897 to R. G. Holbrook. Both of these patents disclose water heaters employing horizontal superposed sections of boiler tubes in staggered relation to each other above a burner base with the cross-section of the tubes in each heater being of a different shape than that of the heater disclosed by the Ackerman patent.

15. Also prior to the issuance of the patent in suit, United States patent No. 1,629,658 was granted May 24, 1927 to Otto Fox. This patent discloses a water heater with a gas burner base and employing vertical sections of boiler tubes. The cross-sections of these tubes differ from those of the patent in suit.

16. Other patents relating to gas fired water heaters, or boilers as these are commonly called, were granted prior to the issuance of the patent in suit, two of which are pertinent here. United States patent No. 1,566,011 granted December 15, 1925 to C. Howard Hook, one of the plaintiffs, discloses a boiler with a gas burner base, and like the Fox patent, shows the boiler sections disposed vertically; and British patent No. 416,686 granted September 19, 1934 to Albert Belton Potterton, Thomas Frederick Charles Potterton and Thomas Potterton, Ltd. discloses the use of heat absorbing fins on the outer surface of the boiler tubes.

17. Horizontal boiler sections superposed on a burner base, horizontal boiler tube sections with the outer walls of the end tubes of each section constituting a part of the furnace housing, radial fins on boiler tubes and the staggering of boiler tubes were used prior to the patent in suit as disclosed by the patents referred to heretofore.

18. Consequently, these facts, considered in conjunction with the file wrapper history of the patent in suit, clearly establish that the elements of novelty of the

Ackerman patent in suit are the cycloidal shaped tube of a cross-sectional shape having parametric equations

$$x = a (O - \sin B)$$
$$y = a (1 - \cos B)$$

which lie between

$$x = - \frac{\overline{\text{IIa}}}{3} \text{ and } x = + \frac{\overline{\text{IIa}}}{3}$$

and the enveloping of an intermediate boiler section by the flanges of adjacen+ top and bottom boiler sections to form an enclosed boiler housing.

19. Plaintiffs' Hook & Miller boiler does not employ boiler tubes of a cross-sectional shape of a cycloidal curve, but does utilize a V-shaped tube of a shape similar to that disclosed in the earlier patent to Holbrook.

20. Plaintiffs' Hook and Miller boiler does not employ flanges of any kind either to overlap intermediate sections or to constitute a housing wall.

21. Plaintiffs' boiler employs an asbestos cord seated between the adjacent boiler sections for the purpose of sealing off the combustion chamber.

### ·Conclusions of Law

1. This Court has jurisdiction of this action by virtue of Sections 1338 and 2201 of Title 28 of the United States Code.

2. All of the elements of a controversy essential to a declaratory judgment action are present.

3. The Ackerman patent in suit, No. 2,247,796, must be restricted to the novel features of the cycloidal shape boiler tubes and the flanges of alternate sections overlapping an intermediate section, as described and claimed in the patent.

4. The features which constitute the differences between the plaintiffs' Hook & Miller boiler and the boiler disclosed in the Ackerman patent in suit cannot be held to be mechanical or functional equivalents without likewise holding the prior art boilers to be like equivalents, which would constitute the prior art anticipatory of the invention of the Ackerman patent.

5. The features which constitute the differences between the plaintiffs' boiler and the boiler disclosed in the Ackerman patent in suit are not mechanical or functional equivalents.

6. The claims of patent 2,247,796 must be limited to the boiler tubes of cycloidal shape and boiler sections with overlapping flanges to avoid reading them upon the prior art patents cited by the Patent Office and when so construed they are not infringed by plaintiffs' Hook & Miller boiler.

7. Accordingly, judgment of non-infringement will be entered declaring that the Hook & Miller boiler does not infringe United States patent No. 2,247,796.

### Discussion

In an effort to clarify our decision, we file this additional discussion.

First, it should be pointed out that the question of the validity of the patent in suit is not before us and that we are only considering the question of infringement at this time. Further, neither party may question the validity of the patent in suit since the defendant is the owner of the patent, for the purposes of this suit at least, and since Hook is an assignor of a one-half interest in the patent to defendants Hook & Ackerman, Inc.

The question of infringement is one of fact. Stilz v. United States, 1925, 269 U.S. 144, 46 S.Ct. 37, 70 L.Ed. 202. From the evidence presented to us, we found that the only novel features of the patent in suit were the cycloidal shape of the tubes and the use of an enveloping flange. The various prior patents cited by us in the findings of fact and by the United States Patent Office in the file wrapper history of the Ackerman patent clearly support and establish this finding.

It is evident from an examination of the Hook & Miller boiler that it does not utilize either of these novel features. Whether the contrasting features employed in the Hook & Miller boiler constitute equivalents to these novel features of the boiler disclosed in the Ackerman patent in suit is the remaining question.

There are two tests of equivalency: (1) identity of function; and (2) substantial identity of way of performing that function. Sanitary Refrigerator Company v. Winters, 1929, 280 U.S. 30; 50 S.Ct. 9, 74 L.Ed. 147. See 3 Walker on Patents (Deller's Ed.) § 466. The range of equivalents to which an inventor is entitled is dependent upon and varies with the degree of the invention, i. e., whether it is a pioneer or secondary invention, or falls into a classification somewhere between those two extremes. Continental Paper Bag Co. v. Eastern Paper Bag Co., 1908, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122. See 3 Walker on Patents (Deller's Ed.) § 471.

A pioneer or primary invention is one which performs a function never performed by an earlier invention and is entitled to a liberal and broad range of equivalents. Hildreth v. Mastoras, 1921, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Morley Sewing Machine Co. v. Lancaster, 1889, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715. In contrast, a secondary invention is one which performs a function previously performed by some earlier invention, but which performs that function in a substantially different way from any that preceded it—Butz Thermo-Electric Regulator Co. v. Jacobs Electric Co., C.C. E.D.Wis.1888, 36 F. 191; 3 Walker on Patents (Deller's Ed.) § 471—and is entitled to a narrower range of equivalents, the limits and extent of which are determined by reference to the prior art. Morley Sewing Machine Co. v. Lancaster, supra. See also discussion in 3 Walker on Patents (Deller's Ed.) §§ 471 to 475, inclusive, and cases cited therein.

The Ackerman patent is a secondary one constituting an improvement on the prior art, is very narrow and limited in scope and therefore entitled only to a narrow and limited range of equivalents. With respect to the first possible novel feature, being the shape of the boiler tubes, the range of equivalents will be restricted to tubes having a cross-section of a cycloidal shape since the form of the tube is the essence of the invention. Cf. Union Paper-Bag Machine Company v. Murphy, 1877, 97 U.S. 120, 24 L.Ed. 935. Where the claims of a patent define an element in terms of form, location or function, thereby creating an express limitation and where that limitation pertains to the inventive step, other forms may not be treated as equivalents. Dow Chemical Co. v. Skinner & Bradley, 6 Cir., 1952, 197 F.2d 807. Consequently, we conclude that the Hook & Miller boiler does not infringe this claim since the water tubes of the Hook & Miller boiler do not have a cycloidal shaped cross-section.

Whether the enveloping flange claim is infringed remains for disposition. According to the claims of the patent in suit, these flanges perform the function of totally enclosing intermediate boiler tube sections and constitute the housing wall of the assembled sections. Further, claim 2 reads that "the edges of alternate sections being provided with interlocking flanges for enclosing the intermediate sections" form "a relatively tight enclosure for the products of combustion". We conclude that the Hook & Miller boiler does not contain any equivalent to this feature. Defendant urges that the asbestos cord performs a function equivalent to that of the enveloping flanges in that it prevents the escape of the products of combustion. The primary answer to this is that assuming the two do perform this identical function, thereby satisfying the first test of equivalents, they perform that function in different ways, thereby failing to satisfy the second test. Furthermore, the flanges perform additional functions. It may be noted also that the evidence adduced at the trial indicated that the flanges do not form a sufficiently tight enclosure to prevent the escape of the products of combustion and that the assembled sections must be wrapped with an additional covering to accomplish this result.

Accordingly, we concluded that the Hook & Miller boiler does not infringe the patent in suit. At this point, we desire to make it clear that we are not ruling in any respect upon the validity of the patent in suit.

One further point raised by the defendant requires discussion. De-

804

fendant argues that the question of infringement is res judicata by virtue of a default judgment entered against a customer of plaintiffs in a suit filed in the District Court of the United States for the Eastern District of New York. It is well settled under the principles of res judicata that a judgment binds only the parties themselves or those in privity with them. Hornstein v. Kramer Bros. Freight Lines, Inc., 3 Cir., 1943, 133 F.2d 143. Furthermore, in order for a judgment to operate as res judicata, the Court entering the judgment must have jurisdiction of the parties and of the subject matter. Riehle v. Margolies, 1929, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669.

Defendant Hook & Ackerman, Inc. attempted to join plaintiffs Hook & Miller as involuntary plaintiffs in the New York suit. Whether the District Court of the United States for the Eastern District of New York ever acquired jurisdiction of plaintiffs Hook & Miller does not appear from the evidence in this case. It does appear that the default judgment entered in the New York suit is directed against the defendant only and not against the involuntary plaintiffs. Counsel for defendant Hook & Ackerman, Inc. appears to admit this since the basis of his argument as indicated on page 469 of the Transcript is not that the plaintiffs Hook & Miller are bound as parties to the New York suit but rather that they are bound as privies to the defendant in the New York suit.

This position cannot be sustained since privity, as used in the doctrine of res judicata, means mutual or successive relationship to the same rights of property. To make one a privy to an action, he must have acquired his interest in the subject matter of the action subsequent to the commencement of the suit. National Lead Co. v. Nulsen, 8 Cir., 1942, 131 F.2d 51, certiorari denied 1943, 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131; Carroll v. Goldschmidt, 2 Cir., 1897, 83 F. 508, certiorari denied 1898, 169 U.S. 735, 18 S.Ct. 940, 42 L.Ed. 1215. Plaintiffs Hook & Miller acquired their interest in the subject matter of the New York

suit prior to the commencement of that suit completely independent of any interest that the defendant in the New York suit had. It follows, therefore, that plaintiffs Hook & Miller were not in privity with the defendant in the New York suit as that term is used in the doctrine of res judicata.

The remaining matters raised by defendant require no additional discussion.

Accordingly, a judgment of non-infringement will be entered.

However, this does not completely dispose of the case since the issue of unfair competition remains for determination. A hearing will be set for the taking of additional testimony relating to this issue.